**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONNA S.,[1] | Case No. 8:22-cv-00938-MAA |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |
| KILOLO KIJAZAKI, Acting Commissioner of Social Security, | |
| Defendant. | |

## I.    INTRODUCTION

On May 6, 2022, Plaintiff Jonna S. ("Plaintiff") filed a Complaint seeking review of Defendant Commissioner of Social Security's ("Defendant" or "Commissioner") final decision denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act.  (Compl., ECF No. 1.)  Pursuant to 28 U.S.C. § 636(c), the parties consented to the

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

jurisdiction of a United States Magistrate Judge. (ECF Nos. 8, 15.) On October 3, 2022, the Commissioner filed an Answer (Answer, ECF No. 12) and the Administrative Record ("AR," ECF No. 13). On March 17, 2023, the parties filed a Joint Stipulation setting forth their respective positions regarding Plaintiff's claims. (J. Stip., ECF No. 21.) The Court deems the matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons discussed below, the Court reverses the decision of the Commissioner and remands the matter for further administrative proceedings.

## II.     SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On January 22, 2019, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging an onset of disability beginning on July 1, 2015. (AR 90, 216–17.) Plaintiff alleged that she was disabled due to the following conditions: severe ulcerative colitis, herniated discs in spine, status post uterine cancer, sciatica from back injury, diabetes, Sjogren's syndrome, plaque psoriasis, depression, anxiety, weakness and low energy, and side effects of ulcerative colitis. (AR 78, 267, 306.) The Commissioner denied the application on April 24, 2019, and again upon reconsideration on August 5, 2019. (AR 110–13, 116–22.) On October 10, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 125–26.) A telephonic hearing was held before an ALJ on September 17, 2020, but due to a technical failure of the recording system, no recording of the hearing was made. (AR 36–37.) The ALJ held a new telephonic hearing on January 20, 2021, at which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert. (AR 34–76.)

In a decision dated March 3, 2021, the ALJ denied Plaintiff's application after making the following findings under the Commissioner's five-step evaluation. (AR 12–33.) At step one, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since July 1, 2015, the alleged onset date, through December 31, 2019, the date she was last insured.  (AR 18.)  At step two, the ALJ found that Plaintiff had severe impairments consisting of diabetes mellitus, ulcerative colitis, and lumbar spine degenerative changes.  (*Id*.)  The ALJ further found that, as of April 2019, Plaintiff also had the severe impairments of major depression, generalized anxiety disorder, and posttraumatic stress disorder.  (*Id*.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the agency's listed impairments.  (*Id*.)  Next, the ALJ found that, through the date Plaintiff was last insured, she had the following Residual Functional Capacity ("RFC"):

> [Plaintiff] had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) as follows: the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; can occasionally climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; cannot be exposed to hazards such as dangerous moving machinery or unprotected heights; can perform simple tasks for two-hour increments with normal breaks; and cannot work in an environment that is stringently production or quota-based, and thus may not perform fast-paced assembly line type of work, but can meet production requirements that allow one to sustain a flexible and goal oriented pace.

(AR 20–21.)  At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work, but that there were jobs that existed in significant numbers in the national economy that she could have performed.  (AR 26.)  Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, from the alleged onset date of July 1, 2015, through the date Plaintiff was last insured on December 31, 2019.  (AR 27.)

3

On April 7, 2022, the Appeals Council denied Plaintiff's request for review. (AR 1–6.)  Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.  *See* 42 U.S.C. § 405(g).

## III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court "must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  "If the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006).

## IV.  DISCUSSION

### A.  Disputed Issues

The parties raise three disputed issues:

///

1. Whether the ALJ properly determined whether Plaintiff's impairments met or medically equaled a listed impairment.

2. Whether the ALJ properly evaluated Plaintiff's subjective complaints of her impairments.

3. Whether the ALJ properly determined Plaintiff's RFC and ability to perform other work.

(J. Stip. 4.)[2]

For the reasons discussed below, the Court finds that reversal and remand for further administrative proceedings are warranted for Issue Two, based on the ALJ's evaluation of Plaintiff's subjective complaints of her impairments. Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1154 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### B.    Applicable Law

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." *Cooper v. Sullivan,* 880 F.2d 1152, 1158 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including a claimant's

---

[2] With the exception of the Administrative Record, citations to pages in docketed documents reference the page numbers created by the CM/ECF headers.

5

statements and residual functional capacity assessments made by consultative examiners, State Agency physicians, and medical experts.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also id.* §§ 404.1513(c), 416.913(c).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  *Trevizo*, 871 F.3d at 678.  First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged.  *Garrison*, 759 F.3d at 1014.  "In this analysis, the claimant is *not* required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"  *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."  *Id.* (quoting *Smolen*, 80 F.3d at 1282).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity.  *Id.* at 1014–15; *see also Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").  "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'"  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir. 2002)).  The ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities for an adult."  Social Security Ruling ("SSR") 16-3p, 2016 SSR LEXIS 4, at *4 (Mar. 16, 2016).

While the ALJ cannot "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness," *Trevizo*, 871 F.3d at 682 n.5, the ALJ may

consider "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and . . . the claimant's daily activities," *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284).  Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant.  *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).  In addition, the ALJ may consider "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms." *Smolen*, 80 F.3d at 1284.  However, it is improper for an ALJ to reject subjective testimony based "'solely on a lack of objective medical evidence to fully corroborate' the claimant's allegations." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)).

The ALJ must make "a credibility determination with findings that are sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)); *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" (quoting *Bunnell*, 947 F.2d at 345–46)).  Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

### C.    Plaintiff's Statements

During the hearing, Plaintiff testified about her impairments as follows:

Her ulcerative colitis began in January 2015.  (AR 47.)  She had "bloody diarrhea all day, every day."  (*Id.*)  She started a job as a chief revenue officer for a technology company in April of that year, but "it just became too much" when she had to travel.  (*Id.*)  Traveling by airplane made her anxious "about having to go to the bathroom" and "it would kind of create a crisis."  (*Id.*)  She was not able to work because she spent "excessive amounts of time in the bathroom."  (AR 48.)  She had to use the bathroom fifteen to twenty-five times each day.  (*Id.*)  She had bloody diarrhea and felt "dry heaves from [her] intestines" where it felt "like it [would keep] coming out."  (*Id.*)  She could not leave the house sometimes because "it [was] just so bad."  (*Id.*)  She had to wear "Depends."  (*Id.*)  She took the medication Lialda, which caused side effects of headaches that meant she had to spend a lot of time in bed.  (*Id.*)  This made her depressed.  (*Id.*)  The only cure was a colostomy bag and she could not "imagine . . . living with that."  (*Id.*)  She used to have a job where she traveled all over the world and now she could not sit through a conference call because of her "anxiety of having to go the bathroom."  (*Id.*)  For the hearing, she planned not to eat or drink anything so that she could sit "for a little bit."  (AR 48–49.)

She had not had a solid bowel movement in six years.  Her doctor had planned for her to begin taking the medication, Humira, but she had recently learned that she needed to have a colonoscopy scheduled before she could begin the medication.  (AR 49.)  The only hospital in her area that took her insurance, Medi-Cal, was Huntington Beach Hospital, but because of the COVID-19 pandemic, colonoscopies were not being scheduled at the time of the hearing.  (AR 49–50.)  She did not know when she would be able to have a colonoscopy scheduled.  (AR 50.)

///

8

She had a weekly appointment with a therapist and a monthly appointment with a psychiatrist. (AR 51.) She took Wellbutrin for depression and Klonopin for anxiety. (*Id*.) She had "been having a really hard time sleeping." (AR 52.) She was going through "more severe depression" recently and felt a "sense of hopelessness" that she did not know how she would "get out of this situation." (*Id*.) She used to get her sense of self-worth from her job, but she had "nothing now" after going through bankruptcy in 2017. (AR 52–53.) Her daughter took her on most of her errands. (AR 54.) She did not have motivation or ambition. (AR 55.) She had a hard time "getting through stacks of papers in [her] house[,] like bills and thinks like that." (*Id*.) She "attempted suicide in 2019." (*Id*.) Her daughter cooked for her and did her laundry. (AR 56.) The most that she could clean was "cleaning up papers . . . around the house." (*Id*.)

She had to spend a minimum of five minutes and up to forty-five minutes at a time on the toilet. (AR 58.) When she was at home, she would spend five minutes on the toilet because she knew she would be able to return to the toilet. (*Id*.) But when she was elsewhere she had to stay in the bathroom longer because she could not easily go in and out of the bathroom. (*Id*.) When she went to the bathroom, she would feel the sensation of cramps in her stomach, and would try to "push something out . . . but there [would be] nothing there because . . . [she would have] gotten rid of all of it" already. (AR 59.) She would continue to feel like she needed to use the bathroom, which meant she needed to stay on the toilet. (*Id*.) This caused her hemorrhoids to worsen and bleed. (*Id*.) She had "quite a few accidents" where she was not wearing "Depends" and there was no place to go to the bathroom. (AR 59–60.) She had accidents "all the time" at the onset of her ulcerative colitis, but now that she was "home all day, every day, [she did not] have accidents that much." (AR 60.) She knew she had to use the bathroom when she felt cramps in her stomach, and she would panic if she could not find a bathroom. (AR 60–61.) She had not been on an airplane since 2017 because of the panic

9

attacks from needing to use the bathroom, but knowing that she could not leave her seat during takeoff and when she had "to sit with [her] seatbelt on." (AR 62.)  The cyclical effect of "knowing [she could not go] and then knowing [she had] to go" to the bathroom was "very stressful" and "really embarrassing." (*Id.*)  She was not able to visit her children and grandchildren, who lived all over the country. (*Id.*)  When she had a panic attack, she would "lose focus" and could not "keep the train of thought" because she had to focus on taking care of herself. (AR 63–64.)

### D.    Analysis

At the first step of the two-step evaluation, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (AR 21.)  At the second step, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*)

In support of this determination, the ALJ discussed Plaintiff's physical and mental symptom allegations separately. (AR 21–25.)  The ALJ stated one reason for rejecting the physical symptom allegations, and two reasons for rejecting the mental symptom allegations. (AR 21.)  As discussed below, these reasons do not amount to clear and convincing reasons, supported by substantial evidence in the record, to reject Plaintiff's subjective complaints of her mental and physical impairments.

#### 1.    Plaintiff's Physical Symptom Allegations

##### a.    *Inconsistent with Objective Medical Evidence*

The sole reason the ALJ stated to reject Plaintiff's physical symptom allegations was that Plaintiff's complaints were "inconsistent with the medical evidence, which showed essentially normal colonoscopies in 2016 and 2019." (AR

21.)  The parties agree that the ALJ rejected Plaintiff's physical symptom allegations on this basis.  (J. Stip. 15, 19.)  Plaintiff argues that the ALJ's reliance on a lack of objective evidence supporting Plaintiff's physical symptom allegations, without more, is legally insufficient to reject Plaintiff's testimony regarding her physical symptoms.  (*Id*. at 17.)  Defendant contends that the ALJ properly rejected Plaintiff's testimony regarding her physical symptoms based on the lack of evidence supporting the severity of her physical symptoms.  (*Id*. at 19.)

By itself, a reason based on lack of objective medical support cannot constitute substantial evidence to support an ALJ's rejection of a claimant's subjective symptom allegations.  *See, e.g., Bunnell*, 947 F.2d at 345 ("[A]n adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.");  *Robbins*, 466 F.3d at 883 ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence.").  Thus, the ALJ's reliance on normal colonoscopies was not a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's allegations regarding her physical impairments.

<b>b.      <i>Other Reasons Asserted by Defendant</i></b>

Defendant argues that the ALJ also gave other reasons for rejecting Plaintiff's physical symptom allegations that the Court should review: Plaintiff's non-compliance with medications and later improvement with medications.  (J. Stip. 19.)  Plaintiff maintains that the only reason provided by the ALJ in rejecting Plaintiff's physical symptom allegations was the lack of supporting objective medical evidence.  (*Id*. at 15–16.)  In addressing Defendant's argument that the ALJ relied on additional reasons in rejecting Plaintiff's physical symptom allegations, Plaintiff first disputes Defendant's assertion that the ALJ noted that Plaintiff was not compliant with her medications.  (*Id*. at 21.)  Plaintiff asserts that the ALJ stated

only that there was a time that Plaintiff was not taking medication.  (*Id*.)  Plaintiff next contends that Defendant does not cite any evidence demonstrating that Plaintiff's chronic diarrhea significantly improved with medication.  (*Id*.)

The Court may review only those reasons that the ALJ specifically cited as grounds to reject Plaintiff's subjective symptom testimony.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.") (citations omitted); *Garrison*, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." (citing *Connett*, 340 F.3d at 874)).  It is well-settled that a reviewing court may not construe an ALJ's general findings from the medical record as reasons to reject a claimant's subjective symptom testimony if the ALJ does not explicitly tie such findings to the testimony.  *See Burrell*, 775 F.3d at 1139 ("Although the ALJ made findings . . . concerning Claimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings.").

Here, the Court finds that, contrary to Defendant's assertion, the ALJ did not rely on evidence of non-compliance with, or improvement from, medications in rejecting Plaintiff's allegations regarding her physical symptoms.  The only time the ALJ referenced Plaintiff's improvement from treatment or whether Plaintiff had been taking medication was within a summary of the medical evidence.  (AR 22 ("the claimant reported she started taking Canasa in June 2016, with a little improvement, and before that she has not been taking any medication since April 2015.").)  The ALJ did not state that she "rested [her] adverse credibility determination" on these findings, and therefore, the Court cannot, and does not, review these reasons as a basis for rejecting Plaintiff's allegations regarding her physical symptoms.  *Burrell*, 775 F.3d at 1139; *see Connett*, 340 F.3d at 874.

///

///

12

2.    <u>Plaintiff's Mental Symptom Allegations</u>

The ALJ rejected Plaintiff's mental symptom allegations based on two reasons: the allegations were "inconsistent with the evidence showing minimal mental health treatment before April 2019 and improvement in her symptoms with treatment after that date." (AR 21.)  The parties agree that the ALJ relied upon these two reasons in rejecting Plaintiff's mental symptom testimony.  (J. Stip. 17, 19.)

a.    *Improvement with Treatment*

One of the reasons the ALJ stated to reject Plaintiff's mental symptom allegations was that Plaintiff's symptoms improved with treatment.  (AR 21.)  In support, the ALJ referenced mental health records between January and June 2020 reflecting that Plaintiff reported she was "doing ok," "doing pretty good," "doing well," and "doing better."  (AR 24 [citing AR 839, 842, 845, 852].)  Plaintiff argues that the ALJ failed to note that, despite such statements, the record shows that Plaintiff was doing worse, and any improvement recorded was minimal.  (J. Stip. 17, 22.)  Defendant contends that the ALJ properly considered progress notes indicating Plaintiff showed signs of improvement with treatment in rejecting her allegations of mental symptoms.  (*Id*. at 20.)

Documented medical improvement may provide a clear and convincing reason to reject a claimant's testimony.  *See Garrison*, 759 F.3d at 1018 (holding that a "course of improvement" can be a clear and convincing reason for rejecting symptom testimony if "data points . . . in fact constitute examples of a broader development").  In the mental health context, however, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment."  *Id*. at 1017.  The fact that a person . . . makes some improvement 'does not mean that the person's impairment[] no longer seriously affect[s] [her] ability to function in a workplace.'"  *Ghanim*, 763 F.3d at 1162 (quoting *Holohan v.*

13

*Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).  "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [the patient's] symptoms . . . [and] must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace."  *Garrison*, 759 F.3d at 1017 (internal citations omitted); *see, e.g.*, *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (finding error where the ALJ "erroneously relied too heavily on indications in the medical record that [claimant] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.").

Here, the ALJ's rejection of Plaintiff's mental symptom allegations based on evidence of improvement with treatment is not supported by substantial evidence. The ALJ referenced a handful of medical records from January to June 2020 where Plaintiff reported she was "doing ok" or "doing well" but appears to have ignored other parts of the record during that period that demonstrated Plaintiff was indeed struggling with her mental health.  (*Compare* AR 24 [citing AR 839, 842, 845, 852] *with* AR 848 (treatment record from April 28, 2020 in which Plaintiff reported she was feeling paranoid, angry, irritable, and that the "government [was] lying").)  In addition, the ALJ referenced a June 23, 2020 medical record in which Plaintiff reported "doing well," but did not acknowledge that in the same record Plaintiff reported that she had been feeling nervous.  (*Compare* AR 24 [citing AR 856] *with* AR 857.)  The ALJ did not acknowledge treatment notes from October and November 2019 that indicated Plaintiff had no useful ability to function in a regular work setting or meet competitive standards in areas of functioning for work activities and interaction with others.  (AR 798–805.)  Furthermore, the ALJ did not address a report from September 1, 2020 in which Plaintiff's therapist stated that Plaintiff's anxiety levels had heightened due to the impacts of the COVID-19

14

pandemic, that Plaintiff reported an increase in her depressive symptoms, and that the increase of both Plaintiff's depression and anxiety negatively impacted her ability to manage normal daily activities. (AR 1216–17.) The record reveals that rather than experience a sustained course of improvement in her mental health symptoms Plaintiff's symptoms waxed and waned. (AR 798–805, 839, 842, 845, 848, 852, 856–57, 1216–17.) It was error for the ALJ to select certain treatment records indicating limited improvement of Plaintiff's mental symptoms while ignoring other treatment records that indicated Plaintiff's depression and anxiety persisted and, more recently, worsened.

In addition to ignoring parts of the record, the ALJ's reliance on the medical records in which Plaintiff stated she was "doing ok" or "doing well" to discredit her testimony was improper. The ALJ did not clarify how "doing well"—in the context of Plaintiff's depression and anxiety diagnoses and treatment—translated to an ability to sustain employment. *See Hutsell*, 259 F.3d at 712–13 (finding a treating physician's report of a chronic schizophrenic "doing well" in a treatment program not inconsistent with disability where the physician also required the claimant to be seen frequently and other doctors concluded that claimant's work skills were seriously deficient). This is error. *See Garrison*, 759 F.3d at 1018 (finding that the ALJ erred in concluding that a few periods of temporary well-being within a sustained period of impairment undermined the claimant's testimony).

b.      *Inconsistent With Objective Evidence of Minimal Mental Health Treatment*

The other reason the ALJ asserted in rejecting Plaintiff's mental symptom allegations was that Plaintiff's complaints were inconsistent with evidence showing minimal mental health treatment before April 2019. (AR 21.) Plaintiff argues that the lack of objective evidence supporting Plaintiff's mental health symptoms alone is legally insufficient to discount Plaintiff's testimony regarding her mental health

symptoms. (J. Stip. 17.) Defendant contends that the ALJ properly considered the lack of evidence from the record and unremarkable mental status examination findings supporting the severity of Plaintiff's mental health symptoms in rejecting Plaintiff's testimony regarding her mental health. (*Id.* at 19–20.)

However, as discussed above, the ALJ could not reject Plaintiff's subjective mental symptom allegations based solely on a lack of objective medical evidence to corroborate Plaintiff's alleged severity of her mental health symptoms. *See Robbins*, 466 F.3d at 883 (holding that where an ALJ's other reason to reject the claimant's testimony was legally insufficient, the sole remaining reason premised on the absence of objective medical support could not justify the credibility determination). Here, this reason forms the sole remaining basis for the ALJ's rejection of Plaintiff's mental health allegations, because, as discussed above, the ALJ's first reason for rejecting Plaintiff's mental health allegations was not supported by substantial evidence. By itself, this reason based on minimal objective findings cannot constitute substantial evidence to support the ALJ's rejection of Plaintiff's subjective symptom allegations. *See id.*

Moreover, even assuming that such a reason could be legally sufficient in theory, it would not be sufficient here. Although the record reflects fewer treatment notes regarding Plaintiff's mental health treatment prior to April 2019—when Plaintiff attempted suicide and was hospitalized—the record nevertheless reflects that Plaintiff's mental health treatment prior to April 2019 still was significant. (AR 732, 1219.) Treatment notes indicate that Plaintiff was treated continuously from August 2017 through June 14, 2019 to address her diagnoses of major depression and generalized anxiety. (AR 732, 1002.) Plaintiff received therapy and had been prescribed medications, including Wellbutrin for her depression, since 2012, as well as Viibryd, Klonopin, Folic Acid, and Ambien. (AR 457, 465, 492, 732.) In addition, the record reflects Plaintiff's previous hospitalization and suicide attempt in 2009. (AR 756–57.) Thus, the quantum of evidence cited here regarding

16

minimal treatment does not give rise to a clear and convincing reason supported by substantial evidence in the record. Accordingly, reversal is warranted.

### E.     Remand for Further Proceedings

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175–78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").

Although the Court has found the ALJ rejected Plaintiff's subjective symptom testimony without clear and convincing reasons, supported by substantial evidence, as described above, the Court is "not satisfied that further administrative proceedings would serve no useful purpose." *Brown-Hunter*, 806 F.3d at 495 (citation and quotation marks omitted). This is because the record as a whole is not fully developed or free from conflicts and ambiguities. *See Dominguez v. Colvin*, 808 F.3d 403, 410 (9th Cir. 2015) (further proceedings were warranted where there were "inconsistencies, conflicts, and gaps in the record"). Given these circumstances, this is not a case where "further administrative proceedings would serve no useful purpose." *Id.* at 407.

///

///

///

///

///

///

///

17

## V.   ORDER

The Court ORDERS that judgment be entered reversing the decision of the Commissioner and remanding this mater for further administrative proceedings.

**IT IS SO ORDERED.**

DATED: June 5, 2023

_____
HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

18